IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| REIDIE JACKSON, PRO SE, § | | |
| also known as REIDIE JAMES JACKSON, § | | |
| TDCJ-CID No. 1164177, § | | |
| Previous TDCJ-CID No. 795456, § | | |
| Previous TDCJ-CID No. 874760, § | | |
| § | | |
| Plaintiff, § | | |
| § | | |
| v. § | 2:14-CV-0035 | |
| § | | |
| MATTHEW SNEAD, C.O., ET AL., § | | |
| § | | |
| Defendants. § | | |

**REPORT AND RECOMMENDATION TO DENY
DEFENDANT SNEAD'S MOTION FOR SUMMARY JUDGMENT**

Before the Court is defendant SNEAD's July 28, 2014 Motion for Summary Judgment with supporting Exhibits and plaintiff's August 13, 2014 Response and plaintiff's Additional Attachments filed August 15, 2014. It is recommended that defendant's motion for summary judgment be DENIED.

The claims stated in the instant cause were severed from cause no. 2:14-CV-0029 by Order to Sever issued February 25, 2014.

With the exception of plaintiff's August 14, 2013 excessive force claim against defendant SNEAD all claims asserted in the instant cause were dismissed with prejudice as frivolous and for failure to state a claim on which relief can be granted by Order of Partial Dismissal issued May 14, 2014.

By his sole remaining claim, plaintiff claims defendant SNEAD violated his rights under the Eighth Amendment. SNEAD is alleged to have utilized excessive force by attacking and

beating plaintiff without provocation or justification and punching him approximately 30 times in the face and head with his fists.

Plaintiff requests an award of $5,000.00 in compensatory and $5,000.00 in punitive damages, along with "injunctive relief as appropriate."

## UNDISPUTED FACTS

During the time relevant to this case, plaintiff was a prisoner in the custody of the Texas Department of Criminal Justice, Correctional Institutions Division (TDCJ-CID), and was housed at the Clements Unit in Amarillo, Texas. Similarly, at all times relevant to this cause, defendant SNEAD was employed by the Texas Department of Criminal Justice, Correctional Institutions Division, and was acting under color of state law.

On August 14, 2013, plaintiff was being escorted to the prison's recreation facilities. It was during this escort that plaintiff alleges he was struck by defendant SNEAD. Subsequent to the incident, a use of force physical was conducted by a Nurse Brown who noted plaintiff complained of pain in his neck and right eye. Nurse Brown noted plaintiff had a small abrasion under the right eye and treated it with cold, damp towels over the injury site. She also noted plaintiff complained of twitching under his right eye, but denied any pain. On the numerous occasions plaintiff was seen for medical reasons over the next few months, he made no complaints except for a November 20, 2013 complaint of loss of movement to his right facial muscles.

## DEFENDANT SNEAD'S MOTION FOR SUMMARY JUDGMENT

By his motion for summary judgment, defendant argues (1) he is entitled to qualified immunity because he did not use excessive force against plaintiff and his actions were

objectively reasonable under the circumstances; and (2) plaintiff's allegations are not supported by the evidence and may properly be considered implausible for purposes of ruling on defendant's motion for summary judgment.

Defendant presents the following summary judgment evidence:

| | |
|---|---|
| Exhibit A | DVD showing photographs of defendant SNEAD, Officer Montoya, and plaintiff after the incident and showing the use of force physical conducted on plaintiff and his escort and confinement back in his cell. |
| Exhibit B | Use of Force Records for Reidie Jackson pertaining to incident occurring on or about August 1, 2014 – August 31, 2013, with supporting affidavit. |
| Exhibit C | Affidavit of Marc Montoya |
| Exhibit D | Affidavit of Patricia Aristimuno, M.D. |
| Exhibit E | Sealed medical records of Reidie Jackson for period of February 1, 2013 through February 1, 2014, with supporting affidavit. |
| Exhibit F | Disciplinary Records for Reidie Jackson for period of January 7, 2010 through October 31, 2013, with supporting affidavit. |

Plaintiff responds to defendant's motion, arguing he has presented evidence supporting each of the factors set out in *Hudson v. McMillian*, 503 U.S. 1, 112 S.Ct. 995, 1000, 117 L.Ed.2d 156 (1992) and that his sworn complaint and summary judgment evidence create one or more issues of material fact on defendant's entitlement to qualified immunity. Plaintiff has alleged there was no need for any use of force whatsoever. Plaintiff contends his account of the amount of force utilized shows the force was more than *de minimis*, there was no threat which could have been perceived by defendant to justify the use of force, and the defendant made no effort to temper the severity of the force utilized.

Plaintiff presents the following summary judgment evidence:

| | |
|---|---|
| Exhibit A | Plaintiff's Complaint Affidavit (unsworn statement made under penalty of perjury) |
| Exhibit B | Unsworn Statement by inmate Lorenzo Lara-Haynes |
| Exhibit C | Plaintiff's Correctional Managed Care Clinic Notes dated 11/20/13 (2 pages) |
| Exhibit D | Unsworn Statement under penalty of perjury by inmate Sha Quan Campbell |

## THE STANDARD OF SUMMARY JUDGMENT REVIEW

Summary judgment may be granted where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Federal Rule of Civil Procedure 56(a). Consequently, after adequate time for discovery and upon motion, summary judgment should be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party bears the burden of proof. *Celotex v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

Only disputes of fact that could affect the outcome of the suit at trial will properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A complete failure of proof concerning an essential element of the nonmoving party's case is fatal and entitles the moving party to judgment as a matter of law. *Celotex v. Catrett*, 477 U.S. at 322-23, 106 S.Ct. at 2552. A motion for judgment as a matter of law is properly granted when the facts and inferences point so strongly in favor of the movant that a rational jury could not arrive at a contrary verdict. If there is substantial

evidence, that is, evidence of such quality and weight that reasonable and fair-minded jurors might reach a different conclusion, then the motion for judgment as a matter of law should be denied. *Waymire v. Harris County, Texas*, 86 F.3d 424, 427 (5th Cir. 1996).

## THE STANDARD OF SUMMARY JUDGMENT REVIEW
## UPON A PLEA OF QUALIFIED IMMUNITY

"Qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation.'" *Saucier v. Katz*, 533 U.S. 194, 199-200, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) (quoting *Mitchell v. Forsyth*, 472, U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)). Qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).

Since qualified immunity depends on whether the defendant violated a clearly established constitutional right, an inquiry must be made whether the plaintiff has asserted a violation of any constitutional right at all. *Siegert v. Gilley*, 500 U.S. 226, 231, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991). Analysis at this stage is performed under the "currently applicable constitutional standards." *Rankin v. Klevenhagen*, 5 F.3d 103, 106 (5th Cir. 1993). The second prong of the qualified immunity test is whether the constitutional right alleged to have been violated was clearly established at the time of the incident; and, if so, whether the conduct of the defendant was objectively unreasonable in light of contemporaneous clearly-established law. *Hare v. City of Corinth*, 135 F.3d 320, 328 (1998). Although analysis under the first prong requires the court to consider currently applicable constitutional standards, analysis under the second prong requires a court to measure the objective reasonableness of an official's conduct

with reference to the law as it existed at the time of the conduct in question. *Id*. (citing *Rankin v. Klevenhagen*, 5 F.3d 103, 108 (5th Cir. 1993).

In deciding which of the two prongs to address first, the court may utilize its sound discretion in light of the circumstances in the particular case at hand. *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009).

**ANALYSIS OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

The malicious and sadistic use of force to cause harm violates contemporary standards of decency; however, not every malevolent touch, push, or shove by a prison guard gives rise to a federal cause of action. *Hudson v. McMillian*, 503 U.S. 1, 112 S.Ct. 995, 1000, 117 L.Ed.2d 156 (1992). A use of force which is not "repugnant to the conscience of mankind," *Whitley v. Albers*, 475 U.S. 312, 327, 106 S.Ct. 1078, 1088, 89 L.Ed.2d 251 (1986), is excluded from the Eighth Amendment's prohibition of cruel and unusual punishment and is considered to be *de minimis*.

In examining a claim of excessive force, the core inquiry is "whether the force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7, 112 S.Ct. 995, 999, 117 L.Ed.2d 156 (1992) (citing *Whitley v. Albers*, 475 U.S. 320-21, 106 S.Ct. 1078, 1085, 89 L.Ed.2d 251 (1986). To determine whether the use of force could plausibly have been thought necessary or whether it evinced a wanton infliction of pain, the Court may evaluate the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived, and any efforts made to temper the severity of the response by prison officials. An absence of serious injury is relevant to this inquiry, but does not constitute its entirety. *Id*. 503 U.S. at 7, 112 S.Ct. at 999.

Plaintiff and defendant present two very different accounts. Plaintiff alleges he was the subject of a completely unauthorized and unprovoked attack while defendant contends a relatively small amount of force was used to subdue plaintiff who initiated an attack on prison guard(s).

Specifically, plaintiff states, by his complaint sworn under penalty of perjury, that he was being escorted by Officer Montoya when defendant SNEAD yelled at him and then:

> [a]s defendant SNEAD arrived at the top of the staircase he rushed the Plaintiff and tackled Plaintiff to the ground. Once on the floor defendant SNEAD gratuitously punched plaintiff's face repeatedly. Upon the fifteenth or sixteenth punch with closed fist, Plaintiff lost consciousness and was awakened by more punches.

Plaintiff also alleges defendant SNEAD choked plaintiff and twisted his ears. Plaintiff alleges he was taken to medical and that the assault resulted in a completely swollen eye, large knots across plaintiff's head and face, and facial paralysis on his right side.

Defendant presents summary judgment evidence in the form of a sworn affidavit by Officer Marc Montoya, averring that, as he and defendant SNEAD were escorting plaintiff to recreation, plaintiff slipped his right hand out of the handcuffs and struck defendant SNEAD in the face with a closed fist. Montoya says he immediately pulled plaintiff to the floor in an attempt to restrain plaintiff, but plaintiff resisted and reached for the food slot tool attached to Montoya's belt. Montoya states the food slot tool could easily be used as a weapon. He states defendant SNEAD struck plaintiff twice in the face with a closed fist, not 30-40 times, to prevent him from grasping Montoya's food slot tool. The two officers were then able to reapply the handcuffs to plaintiff's right hand and Montoya radioed for help. When other officers arrived, Montoya and SNEAD were relieved of their escort duties. Officer Montoya further avers

plaintiff suffered swelling and a small cut underneath his right eye and had no other facial injuries.

Defendant also presents a DVD, defendant's Exhibit A, which documents a post-use of force video begun moments after the use of force terminated, showing plaintiff lying on the floor with four officers holding his arms and legs. Plaintiff is raised to a standing position and is then examined cellside, not in the infirmary, by a nurse. Plaintiff comments briefly to the nurse, who also speaks to him. Plaintiff complains to the nurse that he may have a concussion. Plaintiff then appears to laugh and shouts at the inmates in their cells on either side of the run and is placed in a cell. The only injury visible on the DVD is some swelling by his right eye and an abrasion under it.

Plaintiff's medical records, defendant's Exhibit E, pg. 139 JACKSON 224, show the nurse who examined plaintiff cellside noted he complained of pain to his neck, an abrasion under his right eye, and denied any respiratory complications. Her assessment was:

> Offender c/o neck pain from being pinned to the ground. Visible small abrasion under right eye. Offender has no further medical complaints at this time. Respirations are even and equal. No respiratory distress noted.

The only medical treatment the nurse gave was to instruct plaintiff to soak a towel in cold water and place it over his right eye to decrease inflammation.

As noted by Dr. Aristimuno, in defendant's Exhibit D at pgs. 1-2, plaintiff's injuries, as shown in his medical records and in the post-use of force video and photographs, consisted of a small laceration and slight swelling. Doctor Aristimuno states the injuries were consistent with a minor use of force and did not require anything more than basic first aid care. She further states that, had plaintiff been struck 30 to 40 times in the face area, he would have sustained "heavy

bruising, blood loss, potential brain damage, and fractured or broken facial bones." Treatment would have surpassed first aid care and would likely have included "hospitalization for a number of days."

Plaintiff responds that he tried to turn his face away from the blows and shield himself, that Dr. Aristimuno was not present and does not know the force of each punch, how tolerant plaintiff's body was to each punch or how many punches slid past without a solid connection. He contends the evidence shows defendant SNEAD "hit plaintiff til he 'ran out of gas' or got tired." [Plaintiff's MSJ Response at page 10]. He also argues the video shows he complained of injuries to the back of his head which may have been a concussion.

Plaintiff also points to his medical record at JACKSON 102 MSJ - Ex.E Pg. – 017, for the date of November 20, 2013, three months after the alleged use of excessive force, at which time he was examined by a Dr. Charles Bittle, for "complaints of nerve injury to the right side face post UOF incident [when] [h]e was struck in the face about three months ago with loss of movement to the right facial muscles." After physical examination, Dr. Bittle diagnosed a facial droop on the right side and hypertension. He planed to observe the facial droop for continued improvement.

Plaintiff's post-use of force demeanor as shown in the video, defendant's Exhibit A, and the lack of any medical finding of injury showing only a minor use of force could support a determination that plaintiff had not alleged facts sufficient to state an excessive force claim if the use of some force was reasonable, and defendant SNEAD would, therefore, be entitled to qualified immunity. However, the Court cannot completely disregard plaintiff's contention that no use of force was reasonable and that the photographs, if examined closely, will show

additional injury and that he later suffered right side facial droop, although plaintiff has presented no evidence of a medical finding as to the cause of that facial droop.

Plaintiff has submitted affidavit evidence from various inmates presenting evidence which, while conflicting in many respects, all points to a use of force by defendant SNEAD which was unnecessary and excessive.  By his Exhibit B, plaintiff has presented the unsworn statement by inmate Lorenzo Lara-Haynes stating he saw plaintiff handcuffed in front of his body and saw defendant SNEAD rush up to plaintiff when Officer Montoya pulled plaintiff to the ground.  He says plaintiff landed face-up and defendant SNEAD straddled plaintiff, punching plaintiff's face while Montoya held plaintiff's hands.  Inmate Lara-Haynes says then plaintiff was able to roll until he was in a fetal position and Officer Montoya let plaintiff get his hand and arms up to protect his face.  He states he also saw SNEAD reach his hand to choke plaintiff but Montoya pulled SNEAD back and SNEAD twisted plaintiff's ear.  Inmate Lara-Haynes says he witnessed SNEAD punch plaintiff approximately 30 times all over his head, face and neck and, afterwards, both sides of plaintiff's face were swollen and "he didn't look like himself."

Plaintiff's Exhibit D is an unsworn statement made under penalty of perjury by inmate Sha Quan Campbell stating defendant SNEAD was not escorting plaintiff when he tackled plaintiff to the ground and punched plaintiff in the face, hitting plaintiff "a good 15 times before plaintiff turned his body away."  He also states plaintiff never hit defendant SNEAD or tried to grab any tray slot bar, but lay cured up in a ball trying to avoid SNEAD's blows.

The fact that defendant SNEAD has produced substantial evidence rebutting this and addressing exactly how and why the use of force transpired does not eliminate the fact issue on

the question of whether the use of <u>any</u> force was justified and whether the amount of force was excessive.

In support of his argument, defendant SNEAD has cited the unpublished opinion in *Wilburn v. Shane,* No. 98-21077, 193 F.3d 517, 1999 WL 706141 (5th Cir. Aug. 20, 1999). *Wilburn v. Shane*, however, is not controlling. To the extent it might be instructive, it does not provide sufficient factual details to determine whether the facts of this case are similar. It is further noted that *Wilburn* cites *Wesson v. Oglesby*, 910 F.2d 278, 281-82 (5th Cir. 1990), which is not only pre-PLRA but was decided prior to *Hudson v. McMillian*, 503 U.S. 1, 112 S.Ct. 995, 1000, 117 L.Ed.2d 156 (1992). In *Wesson*, the Fifth Circuit disapproved the credibility determination which underlay the district court dismissal as an abuse of discretion, but, nevertheless, affirmed the dismissal in light of the plaintiff's failure to allege a "significant injury." In the wake of *Hudson v. McMillian*, the "significant injury" consideration is no longer determinative.

While the documented evidence defendant SNEAD has produced calls into question plaintiff's veracity as to the events and his resulting injuries, this Court is required to refrain from making a credibility determination of the evidence at this time and cannot choose one side's version of events over the other's. That decision must be left to a fact-finder.

Defendant's assertion, based on *Wilburn* and discussed above, that this Court can reject plaintiff's summary judgment evidence as implausible has not been adequately briefed or argued. The citations to *Wilburn* and *Wesson* are simply not enough. Further, even if the Court were to find plaintiff's allegation of the amount of force (30 to 40 blows) used against him is implausible because of the medical records, there has not been a showing that the Court would be within its

discretion in rejecting plaintiff's summary judgment evidence that the use of force was not applied in a good faith effort to restore discipline but was, instead, applied maliciously and sadistically in a completely unprovoked attack.

## CONCLUSION

Drawing all reasonable inferences in favor of plaintiff, there exist material issues of disputed fact which preclude entry of summary judgment for defendant on the merits and on the issue of qualified immunity. Federal Rule of Civil Procedure 56(a).

It is the RECOMMENDATION of the Magistrate Judge to the United States District Judge that defendant's Motion for Summary Judgment be DENIED.

## INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

**IT IS SO RECOMMENDED.**

ENTERED this 12th day of March, 2015.


_____
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE


### * NOTICE OF RIGHT TO OBJECT *

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the

signature line.  Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E).  **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date.  *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation."  Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties.  A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court.  *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).